# EXPERT REPORT OF THOM CORLEY, J.D.

*RE: Angel Nicole Sherrard v. City of East Ridge, et al, NO. 1:22-cv-00200*

*In the United States District Court for the*

*Eastern District of Tennessee at Chattanooga*

*June 12, 2023*

## Introduction

The opinions set forth in this report are based on my analysis of documents provided to me in this case and as informed by my formal training, education, independent research, and experience gained over approximately 33 years as a law enforcement officer, investigator and police trainer, as well as 14 years as an attorney and educator.

I have been asked by Defendant City of East Ridge, Tennessee to review the case of Angel Nicole Sherrard v. City of East Ridge, TN, et al, and render independent professional opinions. As required by Rule 26(a)(2)(B)(v) of the Federal Rules of Civil Procedure, I state that I have not testified as an expert witness at any trial within the previous four (4) years; however, I have testified as an expert witness at a deposition for the following case(s):

1. *David and Ruth Ann Little v. City of Morristown, TN, et al.,* NO. 2:21-CV-00047, In the United States District Court for the Eastern District of Tennessee at Greenville. Deposition taken July 15, 2022, testimony on behalf of the Defendant. (case is still pending)

2. *Michael Anthony Barrios v. The County of Houston, TN, et al.,* NO. 3:20-0516, In the United States District Court for the Eastern District of Tennessee at Chattanooga. Deposition taken May 9, 2023, testimony on behalf of the Defendant. (case is still pending)

I also state that I have not issued any publications in the last ten (10) years.

The documents from this case upon which my opinions are based include police reports and investigatory files, city and/or police department policy manuals, court records and pleadings, training records, professional articles, books and policy-based research in the area of police procedure.

Specifically, the documents, information and data reviewed include:

a. Plaintiff's Complaint

b. Defendant City of East Ridge's Answer

c. Defendants Dyer, Miller and Simmons' Answer

d. Defendant Myrick's Answer

e. Personnel and Training Files Maintained by City of East Ridge

f. Policies and Procedures of the Police Department for City of East Ridge

g. Police/Offense Reports and Supplements Maintained by City of East Ridge

h. Video Recording(s) Maintained by City of East Ridge

i. News Accounts from Local Media Outlets Concerning the Incident(s)

j.  Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978)

k.  Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)

l.  City of Canton v. Harris, 489 U.S. 378, 388 (1989)

m.  Graham v. Connor, 490 U.S. 386 (1989)

n.  Galas v. McKee, 801 F.2d 200, 205 (6th Cir. 1986)

o.  Doe v. Claiborne County, 103 F.3d 495 (6th Cir. 1996)

p.  *National Consensus Policy and Discussion on Use of Force*, International Chiefs of Police Law Enforcement Policy Center, July 2020.

q.  Tennessee Code Annotated § 38-8-107, 38-8-112, 38-8-128, 38-8-129

r.  Rules of the Tennessee P.O.S.T. Commission

I relied on the documents, data and information referenced above as a basis for my opinions and my reason thereof. The information that I have reviewed and considered in this case is the type of information that I, and others in my field, reasonably rely upon in examining, analyzing, and determining causation, as well as rendering opinions on proper police conduct and adequate policy and procedures of law enforcement agencies. In addition, the body of knowledge that I have reviewed over the years including texts, research, journals, periodicals and other publications, along with my personal research, experience, training, interaction with colleagues, discussions, interviews and training with law enforcement officers, police supervisors and command staff, as well as my academic studies and teachings all form the foundation for my opinions.

I further rely on my experience and education which is more fully outlined below. More germane to the issues in this case, I rely upon my many years of experience as a law enforcement officer, police trainer and supervisor, and for the last 13 years, as a senior command staff executive of a police department. I also rely on my specific experiences in developing and promulgating policies, evaluating the adequacy of policies, evaluating the appropriateness of officers' conduct through the review of reports, audio recordings, as well as car and body worn camera systems, investigating misconduct allegations against officers and disciplining officers when appropriate.

## Qualifications

My law enforcement experience includes 33 years as a certified police officer pursuant to the requirements outlined by the Tennessee Police Officers Standards and Training Commission (TN POST). My law enforcement career has been entirely with the same agency – the City of Jackson,

3

Tennessee Police Department. During my tenure as a law enforcement officer, I have served in many various assignments and capacities to include patrol officer, narcotics investigator (including undercover assignments), police applicant background investigator, internal affairs investigator, hostage negotiator, general police instructor, use of force instructor, legal instructor, patrol supervisor (first line supervision level), patrol shift commander (middle management level), command staff member (upper management level), legal advisor and police executive. Throughout my years in law enforcement, I have personally received in excess of 2000 hours of law enforcement related training, many of which were specialized training hours in the fields of use of force, narcotics investigations, internal investigations, policy development, personnel management and police supervision and leadership.

My formal education includes an undergraduate degree (B.S.) in Management from Bethel University in McKenzie, Tennessee, which was obtained in 1999. About halfway through my law enforcement career, I attended law school and received my Doctor of Jurisprudence (J.D.) from the Nashville School of Law in 2008 (graduating 3rd out of 113). I was admitted to the Tennessee Bar that same year, and continue to be a licensed and practicing attorney.

For the past 13 years, I have also been employed as full time Adjunct Faculty for Bethel University's College of Professional Studies. Among the undergraduate courses I have taught include the following:

Police Ethics

Introduction to Criminal Justice

Introduction to the U.S. Courts

Introduction to Corrections

Juvenile Justice

Overview of Criminal Procedure

Criminal Procedure I: Pre-trial

Criminal Procedure II: Adjudication

Drugs in Society

Crisis Management in Law Enforcement

Constitutional Policing (Seminar)

I am currently the Chief of Police for the Jackson Police Department in Jackson, Tennessee, and have served in that capacity since January 3, 2022. Prior to this appointment, I served as the Assistant Chief of Police - second in command for the Department – where I also personally oversaw and managed the following Divisions, Units and functions:

4

Professional Standards and Integrity Unit – this unit is tasked with many specialized functions to include police applicant testing and background investigation, citizen complaint management and internal affairs investigation, police officer training, and liaison to the City of Jackson Boards and Departments such as the Human Resources Department, the Risk Management Department and the City of Jackson Beer Board. In addition, this Unit performs announced and unannounced inspections of each Unit or Division of the Department (as well as the Evidence Vault) to ensure policy and procedure compliance.

Central Records Division – this Division is responsible for the maintenance of Jackson Police Department records, including incident and accident reports, traffic, warning and parking citations, warrants and summonses, field interview records, report supplements, and adjudicated criminal case files. This Division is also tasked with responding to subpoenas for records, open records requests, and records expungement management. As the Central Records Division was under my command, I served as the Public Records Request Coordinator pursuant to Tennessee law.

Property and Evidence Unit – this Unit is tasked with the acceptance, maintenance and storage of all evidentiary and general (or found) property obtained by officers of the Jackson Police Department. In addition, this Unit oversees the Fingerprint and Identification Unit (fingerprint examiners, etc.), as well as the chain of custody of evidence, to include delivery to and from the crime lab, availability for court proceedings, etc.

Agency Accreditation Manager – the Jackson Police Department has been accredited through the Tennessee Law Enforcement Accreditation (TLEA) program since 2013 (having been awarded accreditation three times, and undergoing review for its fourth award currently). As Accreditation Manager, I was tasked with ensuring the agency's policies are up to date, applicable, legally supported, properly issued, and are complied with by all personnel. This role gives me a unique perspective on current best practices for local law enforcement agencies.

General Counsel/Legal Advisor – as a licensed and practicing attorney, I also served in the role of General Counsel for the Jackson Police Department. In this role, my duties included advising the Chief of Police and Command Staff on legal issues involving their responsibilities, training all personnel on legal matters (to include legal updates from legislative changes or court opinions), drafting Department policies and City Ordinances, drafting, reviewing and/or revising contracts, reviewing personnel actions, completing risk management reviews and training, and performing case evaluations and liability assessments.

Based upon the collective information provided above, my opinions, and basis for my opinions, are provided with a reasonable degree of law enforcement and professional certainty.

## Background

This brief narrative summary is by no means exhaustive nor do I intend it to be. I rely on and refer to the documents, data and information for a more complete summary.

At this point in the case, it is understood by me that on December 3, 2021, police officers employed by the Defendant City of East Ridge (City) responded to a service call requesting a welfare check on a child at the address of 839 Donaldson Street, East Ridge, Tennessee. Upon arriving, officers encountered the Plaintiff, Ms. Angel Sherrard, and Mr. Devin Sherrard occupying a black Ford Fusion sedan parked in the driveway of the residence. Defendant Officer Teddy Dyer made contact with the driver, Ms. Sherrard and detected the odor of marijuana emanating from inside the vehicle. Officer Dyer inquired with Ms. Sherrard about the child that was the subject of the original call, and Ms. Sherrard confirmed that there was indeed a two-year-old child at the residence. Officer Dyer requested a registration check (via radio) for the tag displayed on the vehicle. Ms. Sherrard asked Officer Dyer why he was "running" her tag. When Officer Dyer explained that he had smelled marijuana in the car and planned to search it, Ms. Sherrard became upset and told Officer Dyer he was not going to search her car. When Officer Dyer told her that he was indeed going to search her car, Ms. Sherrard became more insistent that he was not, and was visibly angry (as depicted on the body cam footage). Officer Dyer advised Ms. Sherrard that if she interfered with his search he would arrest her. Ms. Sherrard continued to argue loudly with Officer Dyer about the pending vehicle search, and Officer Dyer initiated an arrest for Disorderly Conduct. Body cam footage depicts Ms. Sherrard physically resisting the attempt by Officer Dyer to place her into custody. Officer Dyer secured Ms. Sherrard in handcuffs and attempted to place her inside the rear seat area of a police vehicle. Ms. Sherrard verbally and physically resisted Officer Dyer's efforts to have her sit in the rear seat of the police vehicle. Officer Simmons and Sgt. Myrick arrived on the scene and began trying to assist Officer Dyer. Officer Simmons ultimately applied a 'Drive Stun' technique with her Taser to gain compliance, and Ms. Sherrard then was secured in the rear seat area of the police vehicle.

The Plaintiff has filed suit under 42 U.S.C. § 1983 alleging the violation of her rights during this incident. Included among these allegations that the officers decisions to search the vehicle and arrest Ms. Sherrard were unreasonable. In addition, the Plaintiff avers that use of the Taser Drive Stun was likewise an unreasonable use of force. As to the City of East Ridge, the Plaintiff avers that these alleged violations of her rights were caused due to the City's policy, practice or custom, and that the City failed to properly train and supervise its officers.

As requested by Defendant City of East Ridge, this expert will provide opinions on the appropriateness of the City's policy regarding use of force, addressing its components against legal and professional standards for law enforcement. I will also review and provide an opinion on the adequacy of the training provided by the City of East Ridge to their officers, including the Defendant Officers in this case. I will further provide an opinion on the alleged

"custom or practice" of the East Ridge Police Department as well as the response by supervisors of the East Ridge Police Department regarding the incident involved in this litigation.

## Opinions

### I. *City of East Ridge Police Department policy governing the use of force* –

East Ridge PD Policy 10.3, USE OF FORCE

**Opinion** – As written and adopted by the City of East Ridge Police Department, the policy governing the use of force was within standard police practices and procedures, and should not be considered the moving force behind any alleged constitutional violations against the Plaintiff in this case.

**Support for Opinion** –

The Plaintiff's Complaint states that the alleged wrongdoing by East Ridge Police Department officers occurred because of the *"**policies**, customs, practices, and/or procedures of the City."* (Complaint, ¶ 3, emphasis added). Further, the Plaintiff's Complaint alleges deliberate indifference on behalf of the City regarding the use of force in this incident (Complaint ¶ 97).

Pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978), *"…a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. It is when execution of the government's policy or custom, whether made by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."* Also pursuant to Monell, *"…a municipality can be liable under § 1983 only where its policies are the moving force (behind) the constitutional violation."* 436 U.S. 658, 694 (1978). Further, the Court in Monell also stated that *"…we have no occasion, and do not address, what the full contours of what municipal liability under § 1983 may be…and we expressly leave further development on this action to another day."* 436 U.S. 658, 695 (1978).

The Supreme Court of the United States revisited municipal liability under § 1983 in its decision City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985). In that case, the Court recognized that the Monell decision *"held that only deprivations visited pursuant to a municipal 'custom' or 'policy' could lead to municipal liability."* 471 U.S. 808, 819 (1985). It then stated that *"…the origins of Monell's "policy or custom requirement" should make clear that, at the least, that requirement was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal policymakers."* 471 U.S. 808, 821 (1985) (emphasis added).

Specific to this litigation are components of the East Ridge Police Department Use of Force policy that provide support that it is appropriate and within the guidelines of recognized police

7

practices. The legal standard that governs the use of force has been provided by the Supreme Court of the United States in its decision <u>Graham v. Connor</u>, 490 U.S. 386 (1989). In Graham, the SCOTUS held that *"All claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard."* <u>Graham v. Connor</u>, 490 U.S. 386, 109 S. Ct. 1865 (1989).

Specifically, the ruling in <u>Graham</u> found that *"The Fourth Amendment "reasonableness" inquiry is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation."*

When applying that standard to the City of East Ridge Use of Force policy, it is important to note the policy's specific language.

The policy section entitled **GENERAL GUIDELINES (10.3-01)**, as written and in effect on December 3, 2021, stated the following:

*A. ERPD policy on the use of force by Officers is derived from constitutional law, as interpreted by federal courts in cases such as Graham v. Connor, 490 U.S. 386 (1989) and Tennessee v. Garner, 471 U.S. 1 (1985), federal statutes and applicable policies.*

*B. Officers may use "objectively reasonable" force only when it is necessary to carry out their law enforcement duties.*

*C. The "reasonableness" of a particular use of force is based on the totality of circumstances known by the officer at the time of the use of force and weighs the actions of the officer against the rights of the subject, in light of the circumstances surrounding the event. Reasonableness will be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.*

*D. The calculus of reasonableness embodies an allowance for the fact that law enforcement officers are often forced to make split-second decisions about the amount of force that is necessary in a particular situation in circumstances that are tense, uncertain, and rapidly evolving.*

Upon review of the above policy, it is noteworthy that it brings out specific standards, which are grounded in the ruling of the Graham decision of the Supreme Court of the United States. First, the policy states that *"Officers may use "objectively reasonable" force only when it is necessary to carry out their law enforcement duties,"* and that *"The "reasonableness" of a particular use of force is based on the totality of circumstances known by the officer at the time of the use of*

8

*force and weighs the actions of the officer against the rights of the subject, in light of the circumstances surrounding the event.*" This component of the policy directly addresses the Graham standard that a level of force by an officer is "objectively reasonable" when considered *"in light of the facts and circumstances confronting them."* Graham v. Conner, 490 U.S. 386 (1989).

Graham also provides specific factors to consider in order to determine if an officer's use of force is appropriate. Graham v. Connor, 490 U.S. 386 (1989). These factors include:

1. *the severity of the crime,*
2. *whether the person poses an imminent threat to the safety of officers and/or others, and*
3. *whether the person is actively resisting seizure or attempting to evade seizure by flight.*

In further complying with the standards found in Graham, the East Ridge Police Department policy applies the "Graham factors" as found in the Graham v. Connor decision in order to inform their officers of the factors which are to be considered when employing a use of force. Specifically, the policy states in the section of the policy entitled **OBJECTIVELY REASONABLE and the TOTALITY of CIRCUMSTANCES (10.3-02)**:

*A. The reasonableness inquiry for an application of force is an objective one: the question is whether the officer's actions are objectively reasonable in light of the totality of facts and circumstances confronting him or her, without regard to underlying intent or motivation.*

*B. In determining whether a use of force is "objectively reasonable", an Officer must give careful attention to the totality of facts and circumstances of each particular case, including:*

*1. Whether the subject poses an imminent threat to the safety of the officer or others;*

*2. The severity of the crime at issue;*

*3. Whether the subject is actively resisting seizure or attempting to evade arrest by flight;*

*4. Whether the circumstances are tense, uncertain and rapidly evolving; and*

*5. The foreseeable risk of injury to involved subjects and others.*

The language in the East Ridge Police Department's policy on Use of Force also is in keeping with national standards utilized by the profession of law enforcement. Specifically, the IACP Law Enforcement Policy Center's National Consensus Policy and Discussion Paper on Use of Force, published in July 2020, provides guidance and defines the term "objectively reasonable" as the following:

9

*"The determination that the necessity for using force and the level of force used is based upon the officer's evaluation of the situation in light of the totality of the circumstances known to the officer at the time the force is used and upon what a reasonably prudent officer would use under the same or similar situations."* (National Consensus Policy and Discussion Paper on Use of Force, p. 2)

In addition, I reviewed the portions of the City's Use of force policy regarding less-lethal force, as well as its Taser policy (which was the force applied in this case). The Use of Force policy section entitled **USE of LESS-LETHAL FORCE (10.3-03)** states the following:

*A. Less-lethal force is force that is not likely to cause serious physical injury or death.*

*B. Any use of less-lethal force must be both objectively reasonable and necessary in order to carry out the Officer's law enforcement duties.*

Likewise, the East Ridge Police department Taser policy (policy 10.7, X26/X26P Taser) states the following:

<u>**PROCEDURES (10.7-01)**</u>

*The Advanced TASER X26 or X26P is a Conducted Energy Weapon (CEW), an electronic incapacitation device. It is a defensive weapon, which is listed in the force continuum at the same level as aerosol chemical sprays.*

*A. The decision to use the CEW is based on the same criteria an officer uses when selecting to deploy chemical spray. The decision must be made dependent on the actions of the subject(s) and/or the threat facing the officer(s), and the totality of the circumstances surrounding the incident. In any event, the use of the CEW must be reasonable and necessary.*

*B. The CEW is not meant to be used in deadly force situations. The CEW should not be used without a firearm back up in those situations where there is a substantial threat present.*

Comparatively, when discussing the use of less-lethal force, the IACP Law Enforcement Policy Center's National Consensus Policy and Discussion Paper on Use of Force, states the following:

*"Less-lethal force is use of force other than that which is considered deadly force that involves physical effort to control, restrain, or overcome the resistance of another. This includes, but is not limited to, an use of come-along holds and manual restraint, as well as force options such as <u>electronic control weapons</u>, pepper aerosol spray, and impact projectiles."* (National Consensus Policy and Discussion Paper on Use of Force, p. 10, underline added). It also states: *"Officers have the option of using less-lethal force options where deadly force is not authorized, but may use only that level of force that is objectively reasonable to bring the incident under control."* (National Consensus Policy and Discussion Paper on Use of Force, p. 11)

It is obvious from the comparison of the language in the policy of the East Ridge Police Department regarding the use of force, with the "objectively reasonable" standard and relevant

10

factors from the *Graham v. Connor* decision, that the legal mandates, as dictated by the Supreme Court of the United States are met. Likewise, the policy is also in accordance with the guidance as set by the IACP Law Enforcement Policy Center's National Consensus Policy and Discussion Paper on Use of Force.

**Given the above information, and applying the legal and policy standards also mentioned above, it is my professional opinion that the Use of Force policy, as written and which was in effect for the East Ridge Police Department on December 3, 2021 was appropriately written, was within the nationally accepted standards of the law enforcement profession and compliance with such policy should not be said to be the moving force behind any alleged constitutional violation of the Plaintiff.**

### II. *Alleged "failure to train" by the City of East Ridge Police Department* –

- Training of Officer Teddy Dyer
- Training of Officer Anna Simmons
- Training of Officer Candy Miller
- Training of Sgt. David Myrick

**Opinion** – The City of East Ridge has annual in-service training totaling a minimum of 40 hours per year of law enforcement specific training. The training consists of essential subject matter that all law enforcement officers are required to know in order to carry out their duties properly. By providing this training to its officers, the City of East Ridge cannot be said to have been deliberately indifferent regarding the need and adequacy of the training provided to its police officers.

**Support for Opinion** –

The Plaintiff's Complaint alleges that *"The City has a non-delegable duty to ensure that it properly trained and supervised officers to intervene when fellow officers used excessive force, seized persons without probable cause, and brought false claims in efforts to prosecute persons. The City also had an affirmative duty to ensure that its officers were properly trained in the use of force and when and how they could seize person, and to not bring a criminal prosecution based upon false claims."* (Plaintiffs Complaint ¶ 113).

The Supreme Court of the United States held in *City of Canton v. Harris* that *"inadequacy of police training may serve as the basis for § 1983 liability **only** where failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact."* 489 U.S. 378, 388 (1989) (emphasis added). It is against this standard that the training provided to the East Ridge Police Department officers involved in this incident will be reviewed.

11

Law Enforcement Officers in Tennessee are regulated by the Tennessee P.O.S.T. Commission. The Tennessee P.O.S.T. Commission is responsible for developing and enforcing standards and training for all local police officers. The Commission also promotes continuing law enforcement training for the full-time peace officers in Tennessee. The Commission is composed of 15 members and includes local law enforcement personnel, legislators, and Tennessee citizens who are not connected with law enforcement. Serving as the primary regulatory body for Tennessee law enforcement, the P.O.S.T. Commission develops and enforces standards for law enforcement agencies statewide including physical, educational, and proficiency skills requirements for both employment and training. In addition to setting standards, the Commission certifies law enforcement training instructors, curricula, and specialized schools.

The P.O.S.T. Commission has a formal written set of rules that governs their responsibilities (Rules Of The Tennessee Peace Officer Standards And Training Commission). The rules include, among other pre-employment hiring requirements, certification, basic training academy minimum standards and waivers. Tennessee P.O.S.T. Rules Chapter 1110-02 describes the certification requirements for each officer to initially, and continually, be certified as an officer in the state of Tennessee. In particular, 1110-02-.03 specifically sets out all the requirements for a law enforcement officer certification.

All law enforcement officers in the State of Tennessee must be issued a Certification or a Certification of Compliance in order for them to be a law enforcement officer in Tennessee. This is often referred to as an officer being "certified" by meeting the minimum requirements as dictated by the POST Commission. With an officer's certification, they are issued an individual PSID number that tracks that officer, their training, specialized schools, etc. Additionally, officers must continue further training yearly to keep their certification, some of which is mandated by the POST Commission.

Law enforcement officers in the state of Tennessee are required by statutory law and the Peace Officer Standards and Training Commission (POST) to be trained in certain disciplines and topics. Specifically, officers must meet a basic training standard as required by POST (basic training academy), as well as annual continuing education training as required by POST and Tennessee statute. Among these requirements are training covering the subjects of Citations In Lieu of Arrest, Domestic Violence, Emergency Vehicle Operations, Deadly Force and Firearms Qualification, Child Sexual Abuse, Biased Based Profiling, Responding to the Mentally Ill, De-Escalation Techniques, First Amendment Interaction, and the Duty to Intervene. (POST Rules, TCA 38-8-107, 38-8-112, 38-8-128, 38-8-129). Obviously, as it relates to this litigation, training specific to De-Escalation, Use of Force, 4th Amendment issues and the Duty to Intervene are at issue. It is noteworthy that the officers involved are documented to have had the relevant training listed:

Officer Anna Simmons –
- Emotional Intelligence and Duty to Intervene

12

Officer Candy Miller -
- Introduction to Constitutional Criminal Law and Procedure
- Ethical Issues for law Enforcement
- Use of Force and Liability Issues

Officer Teddy Dyer –
- Introduction to Constitutional Criminal Law and Procedure
- 4th Amendment
- 4th Amendment Exceptions Part 1
- 4th Amendment Exceptions Part 2
- Arrests and Terry Stops and Warrantless Searches (Exceptions)
- De-Escalation Verbal Judo
- Use of Force and Liability Issues
- Emotional Intelligence and Duty to Intervene

Sgt. David Myrick –
- Use of Force and Liability Issues
- Probable Cause, Arrest, Search and Seizure
- Verbal Judo
- De-Escalation Verbal Judo
- Emotional Intelligence and Duty to Intervene

It is apparent that the East Ridge Police Department provides it officers specific training on Constitutional Law including the 4th Amendment, Terry stops, arrests, probable cause, and the use of force and liability issues associated with the use of force. Further, the City of East Ridge also trains its officers on de-escalation tactics and that the officers have a duty to intervene when another officer may witness another officer using excessive force or otherwise acting improperly.

**The records provided to this expert demonstrate that the City of East Ridge, Tennessee has been compliant with the Tennessee statutory and POST Commission requirements, has ensured that their officers meet the minimum professional standards with regard to training and has also provided training above and beyond the minimum standards that are required. Additionally, the City of East Ridge has provided its officers training on the Constitutional Law regarding probable cause and arrests and their duty to intervene.**

### III. *Claim of 'Failure to Supervise' against Defendant City of East Ridge –*

**Opinion** – Through its policies, training and operations, the City of East Ridge Police Department was within standard police practices and procedures with regard to supervision of its personnel, and complying with the policies and procedures governing the supervision of officers should not

13

be considered the moving force behind any alleged constitutional violations against the Plaintiff in this case.

**Support for Opinion** –

The Plaintiff's Complaint specifically states that *"The lack of oversight of the City...created, and helps to maintain an atmosphere that the individual defendants could act in the manner set forth herein, and thus not be punished in any significant way, if at all."* (Complaint ¶ 105). The Complaint goes on to state that *"...their intentional acts along with the deliberate indifference of the City deprived the Plaintiffs of their rights secured to them under the Fourth and Fourteenth Amendments..."* (Complaint ¶ 106).

As is the case with training concerns discussed above, the standard required for § 1983 liability to attach is when failure to supervise amounts to deliberate indifference to the rights of persons with whom police come into contact. (*City of Canton v. Harris*, 489 U.S. 378, 388 (1989))

The City of East Ridge Police Department has established policy that governs the need, requirement and varying roles of its supervisors. Policy 8.6, **Discipline**, specifically outlines these mandates.

This policy directly addresses the role of supervisors at the East Ridge Police Department by stating:

**Supervisory Responsibility and Disciplinary Authority (8.6-07)**

> ***The role of supervisors is crucial in the disciplinary process. Supervisors have the best opportunity to observe the conduct and appearance of officers and to detect those instances when disciplinary actions are warranted (reward, remedial training, Counseling, or punishment).***

According to the records provided to me, the East Ridge Police Department has required supervisors to document periodic evaluations and counseling sessions based upon day-to-day observations of their work performance for all of the individual officers named as defendants in this case. (Personnel and Training files of Sgt. David Myrick, Officer Teddy Dyer, Officer Anna Simmons, and Officer Candy Miller).

The East Ridge Police Department also documents discipline of its employees when punishment is warranted. As an example, Officer Anna Simmons had the following documented discipline in her personnel file.

| | |
|---|---|
| 4/20/2022 | Prohibited Behavior – Courtesy (4.1-13) |
| 5/18/2022 | Policy Violation – Sleeping on Duty (5.1-27) 1 Day off without pay |
| 10/10/2022 | Termination – Violation 10.3 – Use of Force |

Further, ***Discipline Policy, section (8.6-07) B*** describes their method of discipline as a progressive discipline type of punishment. The supervisors are to discipline the employee with the least

14

punitive measures initially and to try positive, constructive measures to change behavior or performance before the imposition of more negative discipline. If those do not work, then increasing more severe measurements may be warranted. Repeated violations can be moved from a less to a more serious level if prior disciplinary actions failed to correct the problem.

As mentioned in the opinion below regarding the allegation of the existence of a "custom" of excessive force and the failure to supervise such force, the documents presented to me contradict that allegation. Also in the records provided to me, the East Ridge Police Department provided specific supervisor training entitled *"Supervising the Toxic Officer"* to Sgt. David Myrick, the supervisor on duty during this incident. (Training Certificate; dated June 2021). Providing supervisor specific training to its employees tasked with supervising officers likewise contradicts the allegation that the East Ridge Police Department is deliberately indifferent to the need for such training and supervision.

**The records provided to this expert demonstrate that the City of East Ridge Police Department, Tennessee has established policies and procedures with regard to the supervision of police personnel. In addition, the records presented demonstrate a practice of documenting the performance of the officers of the East Ridge Police Department, and that they provide supervision training to their assigned supervisors. Further, there is documented evidence that the administration and supervisors of the East Ridge Police Department acknowledge the need and provide any required discipline of their officers when policies are not followed. Given these observations, it should not be said that the East Ridge Police department was deliberately indifferent to the need for proper and appropriate supervision of its employees.**

IV. *Alleged "custom" of the City of East Ridge Police Department, and alleged "failure to supervise" relating to the use of force –*

**Opinion** – Upon review of documents provided pertaining to the incident at issue in this litigation, as well as the information known to me related to the other incidents mentioned by the Plaintiff in her complaint involving officers of the East Ridge Police Department, there is no evidence of any "custom" of excessive force involving officers of the Department. Further, the documentation reviewed supports a practice of appropriate reporting and supervision by the East Ridge Police Department when incidents of use of force do occur.

**Support for Opinion** –

In order to establish the City of East Ridge Police Department has an unwritten policy, practice or custom, the Plaintiff must show:

1. *The existence of a clear and persistent pattern of illegal or unconstitutional activity;*
2. *Notice or at least constructive notice on the part of the City;*

15

3. *The City's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and*
4. *That the City's custom was the "moving force" or direct causal link in the constitutional deprivation.* (<u>Doe v. Claiborne County</u>, 103 F.3d 495, 507 (6th Cir. 1996).

The Plaintiff's Complaint specifically mentions incidents involving a Mr. Cummins (July 2021), Mr. Wright (April 2022), and Mr. Bell (May 2021). (Complaint ¶ 81, 82, 83). Although the Plaintiff's effort appears to be to allege these incidents are indicative of a pattern of unconstitutional activity, at least one of the incidents listed occurred AFTER the incident at issue in this litigation. In addition, I have not reviewed those incidents, nor have I been asked to review them, and it is my understanding that no litigation presently exists for the Wright and Bell incidents. Regardless, the mere existence of two other use of force incidents within a several month period should not be said to establish a clear and persistent pattern of any type of improper activity on behalf of the City of East Ridge.

Further, the policy of the East Ridge Police Department specifies that certain actions must be taken by department supervision and administration when officers of the Department use any level of force. Specifically, the policy, as written and in effect on December 3, 2021 stated the following in **Reporting Use of Force 10.4 Review (10.4-05):**

*Review (10.4-05)*

*The Assistant Chief and the Chief of Police will review all reports of use of force on an annual basis, and conclusions will be drawn as to the appropriateness of the use of force used. A list of the review procedure is as follows:*

*A. Any time there is a report of the use of force, it will be the responsibility of the shift supervisor to provide a copy to the Assistant Chief and the Chief of Police. 10.4*

*B. A supervisor will review each use of force report along with other attached documents for appropriate action. If the supervisor determines concern over the matter, it will be turned over to the Assistant Chief and the Chief of Police for review or investigation.*

*C. If the Chief of Police determines that an Internal Affairs investigation is needed, the affected employee will be notified that an investigation will be conducted and the outcome of the investigation.*

*D. The Chief of Police along with the Assistant Chief and supervisors will, on an annual basis, review all use of force reports to determine if patterns or trends are being established by any employee, if additional training is needed, or if the department's policies and procedures need to be revised.*

Upon review of the personnel files of the officers involved in the incident that led to this litigation, it is apparent that the above listed policies and procedures for supervisors and administrative personnel are followed. Specifically, Officer Simmons' file contains documentation that supports that she initiated a use of force report and that her supervisor reviewed it and made a 'reasonableness' determination regarding her use of force. (Personnel file of Sgt. Myrick). Therefore, Sgt. Myrick applied the Use of Force policy in effect at that time, and concluded that the force used was in accordance with that policy. (City of East Ridge Police Department Supervisor's Use of Force dated 12/04/2021). This adherence to existing written policies contradicts the allegation of an unwritten custom, policy or practice as alleged in the Plaintiff's complaint.

**Given the above policies, practices and documentation listed above, it is my opinion that there is no documented support for the existence of a "custom" of excessive force, or the tacit acceptance of any use of force outside the guidelines of written policy for the East Ridge Police Department. Further, the documentation presented to me supports a practice of appropriate supervision by the supervisors and administration of the East Ridge Police Department when incidents of use of force do occur.**

**Note** - It is expected that I may review additional documents, depositions or other proof in this case as they may become available. As such, I reserve the right to amend, update or refine my opinions if any such materials are provided for my review.



Thom Corley, J.D. - BPR# 027163

225 Ramblewood Drive

Jackson, Tennessee 38305

(731) 467-6380