UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ANGEL NICOLE SHERRARD, *et al.*, ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | Case No. 1:22-CV-200 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| CITY OF EAST RIDGE, ) | Magistrate Judge Susan K. Lee |
| ) | |
| *Defendant.* ) | |

**MEMORANDUM**

Before the Court is the parties' joint motion to approve a proposed settlement of the claims of the minor Plaintiff, A.L.S., in exchange for a payment of ten thousand dollars. (Docs. 54, 60.) The Court conducted a hearing on the parties' joint motion on August 22, 2023. (Doc. 65.) In addition to counsel, both the minor Plaintiff and her mother and next friend, Plaintiff Angel Nicole Sherrard ("Ms. Sherrard"), attended the hearing. (*See id.*) The Court heard testimony from Ms. Sherrard. (*See id.*)

**I.      FACTS**

Plaintiffs allege that on December 3, 2021, when A.L.S. was fifteen years old, East Ridge police officers used excessive force to arrest Ms. Sherrard on groundless accusations. A.L.S. witnessed part of the alleged assault, handcuffing, and tasing of her mother. When A.L.S objected, officers allegedly yelled at and handcuffed her, threatened her with arrest, pushed her to the ground, raised her from the ground by pulling her handcuffed arms painfully up behind her back, slammed her back to the ground face first, and forced her into a police car.

A.L.S., Ms. Sherrard, and an adult child of Ms. Sherrard's who was also involved in these events filed suit against East Ridge and four individual officers in Hamilton County Circuit Court on July 12, 2022, asserting ten causes of action: claims under 42 U.S.C. § 1983 for excessive force, seizure without probable cause, failure to protect and render aid, malicious prosecution, free-speech deprivation, and conspiracy to violate civil rights, and claims under state common law for battery, assault, civil conspiracy, and malicious prosecution. (Doc. 1-2 at 5–29.) Defendants removed the case to federal court on August 10, 2022. (Doc. 1.) The matter was set for a jury trial on January 29, 2024. (Doc. 21 ¶ 8.)

On July 17, 2023, Plaintiffs and East Ridge filed a notice of settlement.[1] (Doc. 53.) On July 19, A.L.S. and East Ridge filed a joint motion to approve a settlement of A.L.S.'s claims in exchange for ten thousand dollars. (Doc. 54.) The parties filed sealed copies of the settlement agreement, Ms. Sherrard's affidavit, and the affidavit of Plaintiff's counsel, Robin R. Flores ("Mr. Flores"). (Docs. 60–62.) Both affidavits assert that "A.L.S. did not sustain any significant injuries and received no medical or psychological treatment as a result of the events complained of." (Doc. 60 ¶ 5 [Sherrard Aff.]; Doc. 61 ¶ 6 [Flores Aff.].) Counsel further represents that based on his forty-percent contingency-fee arrangement with all Plaintiffs, four thousand dollars towards his fee will be deducted from A.L.S.'s share of the settlement proceeds. (Doc. 61 ¶ 11 [Flores Aff.].) No costs or expenses will be deducted from A.L.S.'s share of the settlement proceeds. (*Id.* ¶ 12.)

---

[1] One of the individual Defendants had been dismissed by stipulation on July 14, 2023. (Doc. 51.) The other three individual Defendants were dismissed by stipulation on July 17, 2023, shortly before the filing of the notice of settlement. (Doc. 52.)

2

Ms. Sherrard testified during the hearing that she plans to half or more of A.L.S.'s settlement proceeds into a savings account for A.L.S.'s future needs and to spend the remainder for A.L.S.'s immediate needs, such as clothing, shoes, and braces. Ms. Sherrard also testified that she has never declared bankruptcy, she currently has no debt, and she will not spend any of A.L.S.'s settlement proceeds other than for A.L.S.'s expenses.

## II. STANDARD OF REVIEW

When a settlement agreement disburses ten thousand dollars or more to a minor, the Court must review and approve the settlement in accordance with Tennessee law. *See J.O. by Obitts v. Bledsoe Cnty. Bd. of Educ.*, No. 1:15-cv-329, 2017 WL 1533541, at *1 (E.D. Tenn. Apr. 4, 2017) (citing *Smith v. ABN AMRO Mortg. Grp., Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011)). Under Tennessee law, "[i]n any tort claim settlement involving a minor, the court shall conduct a hearing at which the minor and legal guardian are present if the tort claim settlement . . . [i]s a settlement of ten thousand dollars ($10,000) or more." Tenn. Code Ann. § 29-34-105(a)(1)(A).

The court must make an independent determination about whether the settlement is in the minor's best interest. *Henry v. Knox Cnty., Tenn.*, No. 3:18-cv-321, 2019 WL 1387713, at *3 (quoting *Thrivent Fin. for Lutherans v. Camp*, No. 1:15-cv-146, 2015 WL 9587728, at *1 (E.D. Tenn. Dec. 30, 2015)). The court also must determine what is "fair and reasonable" compensation to the attorney. *J.O. by Obitts*, 2017 WL 1533541, at *1. Finally, the court "has the discretion to determine whether the settlement proceeds are to be paid to the minor's legal guardian or held in trust by the court until the appropriate time." *Id.* § 29-34-105(c).

## III.  ANALYSIS

The applicable law requires the Court to make three determinations: (1) whether the settlement is in the best interest of A.L.S.; (2) what is fair and reasonable compensation to Mr. Flores as A.L.S.'s attorney; and (3) whether the proceeds should be paid to Ms. Sherrard as A.L.S.'s legal guardian or held in trust by the Court for an appropriate length of time. *Supra* § II. The Court concluded during the hearing that the settlement is in A.L.S.'s best interest considering the uncertainty of any recovery at trial and that A.L.S. suffered no physical injuries. The Court also concluded during the hearing that it is in A.L.S.'s best interest for the settlement proceeds to be paid to Ms. Sherrard as A.L.S.'s custodial parent and legal guardian based on Ms. Sherrard's testimony about her plans for the proceeds and her history of financial responsibility. Thus, the only question remaining is whether the proposed compensation to Mr. Flores is fair and reasonable.

In determining what constitutes fair and reasonable compensation to an attorney, a trial court must consider the ten factors set out in Tennessee Rule of Professional Conduct 1.5, which apply regardless of the age of the client. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 185 (Tenn. 2011); *see also Thrivent Fin. for Lutherans v. Camp*, No. 1:15-cv-146-SKL, 2015 WL 9587725, at *1–2 (E.D. Tenn. Dec. 30, 2015). Those factors are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

4

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a). When the client is a minor, the trial court should "rigorously analyze" the factors given the court's "special responsibility to protect minors' rights and best interests." *Wright*, 337 S.W.3d at 185. At the same time, the trial court must ensure the attorney "receive[s] sufficiently reasonable fees to ensure that [attorneys] have the necessary incentive to accept such cases in the future." *Id.*

The trial court is not to "rely solely or even primarily on the lodestar computation in determining a reasonable attorney's fee involving minors."[2] *Wright*, 337 S.W.3d at 180. The amount of an attorney's time and labor still "will always be relevant in cases where the court is asked to determine a reasonable fee." *Id.* at 181. For example, "[k]nowing the number of hours spent on the case . . . enables the court, in its discretion, to cross-check the reasonableness of a fee by computing the effective hourly rate." *Id.* at 181 n.22. Therefore, the court may consider such a computation in its discretion. *Id.*

---

[2] The lodestar computation consists of "multipl[ying] the number of hours that the attorney has reasonably expended on the case times a reasonable or customary hourly rate," with the court making some discretionary adjustments to account for other relevant factors, such as the factors in Tennessee Rule of Professional Conduct 1.5. *Wright*, 337 S.W.3d at 179.

5

The existence of a contingency-fee arrangement does not control the analysis. Rather, in making its reasonableness determination, "the trial court *shall not consider* the fee agreement between the attorney and the minor's next friend, because any such agreement does not bind the minor." *Id.* at 185 (emphasis added). Thus, "the proper question is not whether the contract amount is reasonable but rather what the reasonable fee would be in the absence of a contract." *Id.* at 183. The risks the attorney faced when deciding whether to accept the case should be considered, however. *Id.* For instance, several of the factors encompass the degree of risk to the attorney, namely factors one (time and labor involved and novelty and difficulty of questions) and three (customary fee in locality for similar services). *Id.*

Thus, because "[s]ome cases present a greater or lesser risk of non-recovery than others, . . . a court should determine a reasonable fee based on the actual level of risk" in that particular case. *Id.* at 183. This includes evaluating such potential barriers to recovery at the outset as a defendant's insurer's refusal to defend or a possible contributory negligence defense that could bar recovery. *Id.* at 183–84 (citing *Pellegrin v. Nat'l Union Fire Ins. Co. of Pittsburgh (In re Abrams & Abrams, P.A.)*, 605 F.3d 238, 248–49 (4th Cir. 2010)). Such factors could justify a higher fee. *Id.* On the other hand, where the risk of nonrecovery was low at the outset, such as in a case with compelling facts and limited uncertainty about liability, a lower fee may be appropriate. *Id.* at 184 (*citing Madison Cnty. Dep't of Human Res. V. T.S. ex rel. F.M.*, 53 So.3d 38, 54 (Ala. 2010)).

Here, the parties request a fee of four thousand dollars for Mr. Flores's representation of A.L.S. resulting in her ten-thousand-dollar recovery. The Court considers each of the relevant factors below.

### A. Time and Labor, Novelty and Difficulty, and Skill Required

The first factor the Court must consider is "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(1).

As to the time and labor required, Mr. Flores stated during the hearing that the matter had been very time intensive. He estimated that he devoted between fifty and fifty-five hours to the case. Although he did not keep separate time records for the work that was devoted solely to A.L.S.'s claims, he estimated he spent between two-thirds and three-quarters of the total time on issues that involved only the two adult Plaintiffs.[3] Thus, at between one-quarter and one-third of his total time, Mr. Flores would have spent somewhere between 12.5 and 18.3 hours on A.L.S.'s claims. Defendant's counsel, Keith H. Grant ("Mr. Grant"), agreed with Mr. Flores that this case required significant time and labor. Mr. Grant noted that the parties completed significant discovery, including seven half-day depositions and approximately fifteen hours of written discovery, in addition to work on the pleadings. Considering the foregoing, the Court accepts Mr. Flores's estimation as a reasonable reflection of the time and labor required for A.L.S.'s case.

As to the novelty and difficulty of the questions involved and the skill required, Mr. Grant acknowledged that the case was not particularly novel or difficult compared to other § 1983 actions, except as to the question of whether A.L.S. suffered unlawful force. Mr. Grant stated that Mr. Flores would have been required to complete specific research on that questionbecause

---

[3] In future cases involving the representation of a minor, counsel is reminded to "keep a record of time spent on the minor's case, even if that attorney does not ordinarily keep track of time as part of the attorney's practice." *Wright*, 337 S.W.3d at 181.

7

evidence indicated that both the officer and A.L.S. went to the ground together at one critical point. Mr. Flores did not provide any additional or contrary information on novelty, difficulty, or the skill required for the case. Researching one fact-based issue for excessive force is not unusual for a § 1983 action. Overall, the Court concludes that the questions involved were of average novelty and difficulty for a § 1983 action. The Court recognizes, however, that a § 1983 action is a subset of actions with an inherent degree of difficulty for which specialized skill and experience is helpful.

The Court must also evaluate the degree of risk in the case and any potential barriers to recovery at the outset. *See Wright*, 337 S.W.3d at 183. Mr. Flores acknowledged that A.L.S.'s case was weak on damages, because A.L.S. suffered no injuries and underwent no physical or psychological treatment. Mr. Flores further acknowledged that there was a significant factual question about the extent of force exerted against A.L.S. Mr. Grant confirmed that A.L.S.'s claim was the weakest of the three Plaintiffs' claims because of questions about the degree of force to which she was subjected. In fact, Mr. Grant opined that his client might have been able to win summary judgment on A.L.S.'s claim based on this alleged defect in her case. The Court therefore finds that there were two specific barriers to recovery at the outset of the case that presented an enhanced degree of risk to Mr. Flores in accepting the representation of A.L.S.

Considering the time and labor Mr. Flores reasonably spent representing A.L.S., the novelty and difficulty of the questions in her § 1983 claims, the skill required to properly represent A.L.S., and the risks of nonrecovery in A.L.S.'s case, the Court concludes four thousand dollars is a fair and reasonable fee. The Court reaches this conclusion mindful both of its obligation to

8

protect A.L.S.'s interests and the need to ensure that attorneys like Mr. Flores "have the necessary incentive to accept" cases like A.L.S.'s in the future. *See Wright*, 337 S.W.3d at 183–85.

The Court next cross-checks the reasonableness of Mr. Flores's requested fee by calculating the effective hourly rate of the fee. *Wright*, 337 S.W.3d at 181 n.22. At the 12.5 to 18.3 hours Mr. Flores estimated spending on A.L.S.'s case, the effective hourly rate of a four-thousand-dollar fee would be between three hundred twenty dollars ($320) and two hundred nineteen ($219) per hour. Mr. Flores represented during the hearing that his typical rate is three hundred fifty dollars ($350) per hour. Mr. Grant represented that Mr. Flores's typical rate is reasonable for a plaintiff's attorney in this type of litigation.[4] The Court finds that the range of effective hourly rates for Mr. Flores's requested fee is reasonable for an experienced attorney in this area. The calculation of the effective hourly rate therefore supports the Court's conclusion above that the requested fee is fair and reasonable in light of the first factor.

### B. Likelihood of Preclusion of Other Employment

The second factor the Court must consider is "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(2). The parties did not present any evidence on this factor. Given the nature of this case and the scope of Mr. Flores's typical practice, the Court assumes Mr. Flores's acceptance of this case would not have precluded other employment for him,

---

[4] While Mr. Grant acknowledged his own rate as defense counsel is lower, he noted that he, unlike a plaintiff's attorney in this type of case, is guaranteed to receive payment. As discussed above, a higher degree of risk helps to justify the reasonableness of a higher hourly rate.

and that A.L.S. did not in any case have knowledge of such a limitation. This factor therefore does not support a higher than normal fee for the representation.

### C. Customary Fee Charged

The third factor the Court must consider is "the fee customarily charged in the locality for similar legal services." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(3). This factor includes consideration of the degree of risk to the attorney. *Wright*, 337 S.W.3d at 185.

It was represented at the hearing, and it is consistent with the Court's own knowledge of legal practice in this community, that Mr. Flores is one of a limited number of practitioners who typically take cases against police departments under § 1983. Such cases are typically taken on a contingency basis. Although the Court cannot consider the reasonableness of the contingency-fee arrangement in this particular case, the fact that such cases are typically taken on a contingent basis indicates a higher degree of risk in such cases in general. The Court has also determined above that there were particular barriers to recover at the outset of A.L.S.'s case. *Supra* § III.A. And as the Court also determined above, the effective rate of the proposed fee is reasonable for this area. *Supra* § III.A. On the whole, this factor supports a fee of four thousand dollars in this case.

### D. Amount Involved and Results Obtained

The fourth factor the Court must consider is "the amount involved and the results obtained." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(4). As discussed during the hearing and in the affidavits, A.L.S. suffered no physical injuries, incurred no medical expenses, and incurred no mental-health expenses. A.L.S. thus had no financial loss due to the events alleged in the case, and Mr. Flores acknowledged that damages were the weak issue in A.L.S.'s claim. Mr. Flores

10

nevertheless negotiated a $10,000 settlement payment for her, which is an advantageous result under the circumstances. A low amount involved and an advantageous result support the amount of fees Mr. Flores seeks in this case.

### E. Time Limitations

The fifth factor the Court must consider is "the time limitations imposed by the client or by the circumstances." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(5). The parties did not present any evidence on this factor, and no unusual limitations are apparent to the Court from the case file. This factor therefore does not support a higher than normal fee for the representation.

### F. Nature and Length of Professional Relationship

The sixth factor the Court must consider is "the nature and length of the professional relationship with the client." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(6). In the absence of evidence to the contrary, and given the nature of this case, the Court assumes this is Mr. Flores's first time representing A.L.S. This factor is neutral on the fee amount that would be reasonable for the representation.

### G. Experience, Reputation, and Ability of Lawyer

The seventh factor the Court must consider is "the experience, reputation, and ability of the lawyer or lawyers performing the services." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(7). Mr. Flores is a licensed Tennessee attorney in good standing with more than twenty years or experience practicing law in the state. Tenn. Bd. Pro. Resp. Attorney Details for Robin Ruben Flores, available at https://www.tbpr.org/attorneys/020751 (last visited Sept. 15, 2023); (*see also* Doc. 61 at 2). Counsel for Defendant East Ridge represented during the hearing that Mr. Flores has a reputation as an attorney who works hard for his clients, and that he is one of the few attorneys

11

in the area who takes Plaintiffs' type of case. This factor supports the amount of fees Mr. Flores seeks in this case.

### H. Whether Fee Is Fixed or Contingent

The eighth factor the Court must consider is "whether the fee is fixed or contingent." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(8). Because the Tennessee Supreme Court has stated that a contingency-fee agreement is not binding and should not be considered, *Wright*, 337 S.W.3d at 185, it appears this factor should receive little to no weight in the analysis.

### I. Prior Statements About Fees

The ninth factor the Court must consider is "prior advertisements or statements by the lawyer with respect to the fees the lawyer charges." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(9). The parties have presented no evidence on this factor. This factor is neutral on the fee amount that would be reasonable for the representation.

### J. Whether Fee Agreement Is in Writing

The tenth factor the Court must consider is "whether the fee agreement is in writing." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(10). As a contingency-fee agreement, the parties' fee agreement was necessarily in writing. However, because a contingency-fee agreement is not binding on a minor, this factor is entitled to little weight. *See Wright*, 337 S.W.3d at 185.

## IV. <u>CONCLUSION</u>

Considering each of the factors above and the circumstances of the case as a whole, with particular attention to the first factor and because none of the factors or circumstances point against the reasonableness of the requested fee, the Court concludes the proposed compensation to Mr.

Flores is fair and reasonable. As the Court concluded during the hearing, the proposed settlement is in A.L.S.'s best interest and it is appropriate for the settlement proceeds to be paid directly to Ms. Sherrard as A.L.S.'s custodial parent and legal guardian. The Court therefore **GRANTS** the joint motion (Doc. 54) and **APPROVES** the proposed settlement of A.L.S.'s claims, with attorney fees of four thousand dollars to be paid to Mr. Flores as A.L.S.'s attorney.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**